UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

ADA VITTALY, et al,

    Defendants.

                                    /

No. C 04-3186 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiff's Motion for Summary Judgment**

    On August 5, 2004 the United States brought this action against defendants Ada M. Vittaly, Alex Villasenor, and Chase Mortgage Company (collectively, the "defendants") under 26 U.S.C. sections 7401–7403 to reduce to judgment outstanding federal tax assessments and to foreclose federal tax liens upon the property in question. Now before the court is plaintiff's motion for summary judgment.

    Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

    The property in question was originally owned by defendant Vittaly and is located at 1020 Sunnybrook Drive, Lafayette, California (the "subject property"). In November and December of 1999, assessments were made against the subject property for tax years 1991–1996, and as of September 19, 2003 they totaled $243,964.69. A portion of these tax assessments was for income from the sale of stock owned by Vittaly. The Information Returns (upon which these assessments

1 were based) are sources of income which are provided to the Internal Revenue Service ("IRS") by
2 payors of wages, interest, dividends, distributions such as stock sales, and sales of real estate.  In the
3 Information Returns submitted by Vittaly, there was no indication of the basis or the quantity of
4 stock sold.  Pezzolo Dec. ¶¶ 3–5, Exh. 6.  In making these tax assessments, the IRS assigned a cost
5 basis of $0 to the subject property as defendant Vittaly was unable to demonstrate her cost basis.  On
6 March 28, 2005, the IRS issued Certificates of Assessments (Forms 4340) after certifying the 1999
7 assessments of the subject property.

8       In August of 2000, Vittaly entered into a loan agreement with Ohio Savings Bank for
9 $200,000 and a first deed of trust was issued against the subject property.  Chase Mortgage
10 Company ("Chase) is the successor in interest to Ohio Savings Bank.  Villasenor Dec., Exh. 3; <u>see</u>
11 <u>also</u> Stipulation Excluding Defendant Chase Mortgage Company, Docket Entry No. 11, filed on
12 January 4, 2005.[2]  On May 15, 2001 Chase recorded a notice of default on the $200,000 loan in an
13 attempt to foreclose on the subject property.  Villasenor Dec., Exh. 2.  The following month,
14 according to Villasenor, Vittaly requested that Villasenor purchase the property from her to prevent
15 foreclosure.  Villasenor asserts that in July of 2001, Vittaly sold the subject property to him for
16 $100,000 (the alleged amount of Vittaly's equity in the residence[3]) pursuant to an oral agreement.[4]
17 On July 16, 2001 Villasenor paid the $9,892.32 owed to Chase to cure the default under the first
18 deed of trust.  Villasenor Dec., Exh. 4

19       Prior to issuance of a notice of default for the loan, on May 2, 2001 the IRS recorded a
20 Notice of Federal Tax Lien against the subject property (the "Tax Lien").  Moore Dec., Exh. 2.  In
21 the same month as the oral agreement, on July 6, 2001, Vittaly recorded a grant deed conveying the
22 subject property to herself and to Alex Villasenor as joint tenants.  Moore Dec., Exh. 3.[5]  Villasenor
23 maintains that he was unaware of the existence of the Notice of Tax Lien until August 6, 2001.
24 Villasenor Dec., Exh. ¶¶ 8, 9.[6]  In any event, the subject property has been the residence of
25 Villasenor since December 2001.  Villasenor Dec. ¶ 15.  Villasenor contends that he took over the
26 residence to prevent the loan entering into default and that he has spent in excess of $200,000 in

2

property taxes, payments, mortgage payments, and substantial repair work. Villasenor Dec. ¶¶ 15–18.

On December 9, 2002, the oral agreement between Vittaly and Villasenor was reduced to writing. Vittaly and Villasenor entered into an Agreement for the Sale of Real Property ("Agreement"). Moore Dec., Exh. 4.[7] Under the terms of this Agreement, Villasenor would purchase Vittaly's entire interest in the subject property for $300,000 (payable in cash for $100,000 and an assumption of the $200,000 in debt remaining as a deed of trust on the subject property). As of September 25, 2002, the appraisal value of the subject property was $550,000. Moore Dec., Exh. 5.

On August 5, 2004, the United States brought this action against Ada Vittaly seeking to reduce the Tax Lien to judgment and to foreclose on the action. During the course of litigation, on June 12, 2005, defendant Vittaly passed away. On November 23, 2005, despite the fact that he was the sole owner of the subject property following Vittaly's death, Villasenor made a written demand to the estate of Ada Vittaly (the "Estate of Vittaly"), requesting that pursuant to the terms of the Agreement the subject property be conveyed to him. Villasenor Dec., Exh. 9.

Prior to oral argument, the United States and Villasenor settled with respect to the payment of the lien. Consequently, the court need not reach the foreclosure claim. The only remaining issue is the government's request to reduce the IRS assessments to judgment against the Estate of Vittaly.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

3

1   issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the
2   opposing party will have the burden of proof at trial, the moving party need only point out "that
3   there is an absence of evidence to support the nonmoving party's case." Id.
4       Once the moving party meets its initial burden, the nonmoving party must go beyond the
5   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
6   genuine issue for trial." Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving
7   party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th
8   Cir. 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and
9   inferences drawn from the facts must be viewed in the light most favorable to the party opposing the
10  motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

## DISCUSSION

In its motion for summary judgment, the United States asserts that this court should enter judgment against the Estate of defendant Vittaly for the amount of decedent's unpaid tax assessments, including the statutory interest and penalties that have accrued.  In a poorly drafted brief, defendant Vittaly responds that the IRS assessments are clearly erroneous and excessive and that judgment is improper because tax liens attach only to a taxpayer's "interest" in a property.

### I.   Judgment Against Estate of Vittaly

####   A.   Validity of IRS Assessments

Defendants contend that the IRS Tax Lien is improper because it failed to assign Vittaly's stock a cost basis greater than zero.  They contend that all the stock sold by Vittaly would have been inherited or purchased by her and thus, using a carry-over basis, the cost basis would have been significantly greater than zero.[8]  However, the IRS may properly assign a cost basis of zero when the taxpayer fails to establish her basis in a given stock sale. See Coloman v. Commissioner of Internal Revenue, 540 F.2d 427 (9th Cir. 1976).  The taxpayer bears the burden of proving her cost basis, regardless of the fact that it may be difficult to determine. Moore v. Commissioner, 425 F.2d 713

4

(9th Cir. 1970); O'Neill v. Commissioner, 271 F.2d 44 (9th Cir. 1959).  The Information Returns Vittaly submitted provided no indication of her cost basis and thus the IRS appropriately assigned a $0 cost basis.

Moreover, a presumption of correctness attaches to the Commissioner's assessments for unpaid taxes so long as they are "supported by a minimal factual foundation."  Palmer v. United States Revenue Service, 116 F.3d 1309, 1312 (9th Cir. 1997); see also United States v. Janis, 428 U.S. 433, 440–41 (1933) (noting that an assessment, when properly certified, is presumptively correct evidence of a taxpayer's liability and satisfies the government's burden of proof).  The taxpayer bears the burden of establishing that these determinations are incorrect or clearly erroneous.  Id.  In the present action, the assessments have been properly certified and the deficient Information Returns provide the requisite factual foundation.  Vittaly did not meet her burden of establishing her cost basis in the stock sold.  Indeed, it is worth noting that, although riddled with hearsay statements regarding Vittaly's intentions, the declarations of Esther Moisson and Simon Teng (which were submitted by defendants for purposes of this motion) still do not provide any evidence of what the actual cost basis should be.  The court finds that the tax assessments from 1991–1996 are presumptively correct and defendant's assertions to the contrary are unavailing.

### B.  Enforceability of the Tax Lien

In any event, the Estate of Vittaly asserts that the lien cannot be enforced against the entire subject property but only to whatever interest Vittaly held in the property as of May of 2001—when the Notice of Tax Lien was recorded.  Defendant Vittaly also contends that the tax assessments were against Vittaly, who is now deceased, and thus the United States can only assert claims against the Estate of Vittaly—which no longer has any interest in the subject property.

It is unclear why defendant places such emphasis in an assessment of Vittaly's interest in 2001, since, as discussed *infra*, Vittaly held full title to the property on that date.  Further, it is of note that Vittaly's first argument evidences a misunderstanding of how federal tax liens operate; a tax lien does not attach at the time of the recording but rather at the time the assessment is made.

5

Miller v. United States, 763 F. Supp. 1534, 1539 n.8 (N.D. Cal. 1991) (Patel, J.) (noting that "[n]umerous cases stand directly for the proposition that a federal tax lien arises when the IRS makes an assessment coupled with a demand for payment." (citations omitted)); see also TKB Int'l Inc. v. United States, 995 F.2d 1460, 1463 (9th Cir. 1993) (noting that the IRS does not have to file notice of a federal tax lien in order for the lien to be valid as against the taxpayer). As the IRS assessments are supported by fact, pursuant to section 6321 of the Internal Revenue Code ("IRC") a lien attached to the subject property as of the date of these assessments—specifically November and December of 1999 and not May of 2001.

However, although no authority is cited or argumentation provided, defendant is correct that a judgment against the Estate of Vittaly is improper. It is true that a federal tax lien attaches to "all property and rights to property, whether real or personal, belonging to such person" at the time of assessment, 26 U.S.C. section 6321, and any subsequent transfers (after the recording of the lien) will be made subject to the tax lien. See United States v. Donahue Indus., Inc., 905 F.2d 1325, 1330 (9th Cir. 1990); see also In re Kimura, 969 F.2d 806, 809 (9th Cir. 1991) (finding that when the IRS assesses civil penalties for taxes owed pursuant to section 6672 of the IRC, a federal tax lien attaches to all of the taxpayer's property pursuant to section 6321 of the IRC). In addition, the IRS "acquires by its lien no greater right to property than the taxpayer herself has at the time the lien arises." Kenney v. United States, 329 F. Supp. 2d 1193, 1196 (N.D. Cal. 2004) (Zimmerman, Mag. J.) (citing United States v. Durham Lumber Co., 363 U.S. 522 (1960)); see also United States v. Rodgers, 461 U.S. 677, 713 (1983). The parties do not dispute that Vittaly held full legal and equitable title to the subject real property in 1999, the date of the assessment. Consequently, Vittaly (at the time of assessment) held an interest to the entire subject property to which the Tax Lien could properly attach.

However, Vittaly is now deceased and at her death full title in the subject property passed to Villasenor as the surviving joint tenant. The right of survivorship is the "distinguishing feature of joint tenancy." 12 B.E. Witkin, Summary of California Law, Real. Prop. § 34 (10th ed. 2005). At the death of one joint tenant, title passes to the other joint tenant, to the exclusion of all the heirs of

6

the decedent. It is axiomatic, then, that the estate of the decedent joint tenant has no remaining interest in the joint tenancy. Although specifically discussing "judgment liens," support for this holding can be found in the line of cases commencing with the California Supreme Court's decision in <u>Zeigler v. Bonnell</u>, 52 Cal. App.2d 217, 220 (1942). <u>See, e.g.</u>, <u>Grothe v. Cortlandt Corp.</u>, 11 Cal. App. 4th 1313, 1318 (1992); <u>People v. Nogarr</u>, 164 Cal. App. 2d 591, 594 (1958). In <u>Zeigler</u>, the court declined to honor a judgment creditor's lien, finding that because of the right of survivorship, a judgment lien against one member of a joint tenancy was extinguished at the time of his or her death. To avoid losing his or her lien, the <u>Zeigler</u> court held that a creditor would have to attempt to foreclose on the lien or take some similar action to sever the joint tenancy.[9] The court in <u>Dieden v. Schmidt</u>, 104 Cal. App. 4th 645, 653 (2002) limited <u>Zeigler</u>'s holding to cases where the judgment lien was created after the right to survivorship had already arisen. Stated differently, the court found that the extinguishment of a judgment lien by the death of a debtor joint tenant only occurs if the joint tenancy (and the resultant right of survivorship) is created beforethe lien arises. Where, as here, the lien predated the creation of the joint tenancy, and there has been no severance of the joint tenancy, the property is conveyed subject to the lien. <u>Id.</u>

    For present purposes, however, whether or not the right of survivorship was created before or after the recording of the Tax Lien is of no import. That issue speaks to whether the Tax Lien is valid as against the subject property—a matter which the court need not reach since plaintiff has settled with the sole owner of the property. However, the mere fact that Vittaly, prior to her death, deeded her property to herself and Villasenor as joint tenants is sufficient to strip the Estate of Vittaly of any further interest in the property. Accordingly, absent an interest in the property to which the Tax Lien is attached, the court finds no basis upon which the IRS may seek a judgment against the Estate of Vittaly.

/////
/////
/////
/////
/////

7

CONCLUSION

For the foregoing reasons, the court hereby DENIES plaintiff's motion for summary judgment. The United States is not entitled to satisfy the tax lien of $243,964.69 plus any accrued interest and penalties against the Estate of Vittaly.

IT IS SO ORDERED.

Dated: July 6, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# ENDNOTES

1. The following facts were drawn from Complaint unless otherwise noted.

2. On January 4, 2005, pursuant to a stipulation, Chase was excused from further participation in this action.

3. Defendants assert that Vittaly's equity was approximately $100,000 because although on August 18, 2000 the property's appraisal value was $360,000 (Ustick Dec. ¶ 2, Exh. A), the property had a $200,000 first deed of trust from Ohio Savings Bank, approximately $50,000 was needed for extensive repairs and another $10,000 was required to cure the default.

4. At oral argument the Estate of Vittaly argued that the oral agreement was actually entered into in May of 2001. However, defendants' as well as plaintiff's papers reference a July oral agreement.

5. In California "the sole technical requisite for creating a joint tenancy is an express declaration of joint tenancy in the instrument." 12 B.E. Witkin, Summary of California Law, Real. Prop. § 35 (10th ed. 2005); Gonzales v. Gonzales, 267 Cal. App. 2d 428, 435 (1968). There is no requirement that the words "right of survivorship" be used in the deed or agreement. See Estate of Davis, 88 Cal. App. 2d 704, 705 (1948). Here, Vittaly clearly stated that the subject property was to be deeded to herself and Villasenor as "joint tenants." Villasenor Dec., Exh. 3. Under California law, this was sufficient to establish a joint tenancy.

6. At oral argument the Estate of Vittaly asserted that Villasenor was aware of the notice of the Tax Lien in June 2001 rather than in August 2001, as previously argued. It was this awareness, defendant's counsel argued, which led to the granting of a joint tenancy interest to Villasenor. Defendant's newly minted arguments, similar to those contained in his briefing papers, are incoherent and in any event, the court need not reach them.

7. Defendant Villasenor's objections to Exhibits 4 and 5 of Thomas Moore's declaration are overruled. These documents are party-opponent admissions under Federal Rule of Evidence 801(d)(2)(B) as they were submitted by the decedent's agent (Taggart) in requesting a discharge of the Tax Lien. See Van Hook Dec. ¶ 2.

8. The statements in the declarations of Esther Moisson and Simon Teng regarding the subjective intentions of Ada Vittaly are excluded as inadmissable hearsay.

9. The Zeigler decision states in relevant part:

> [U]pon the purchase of the interest of th[e] joint tenant at execution sale the joint tenancy is severed and the purchaser and the other joint tenant or tenants become tenants in common . . . When a creditor has a judgment lien against the interest of one joint tenant he can immediately execute and sell the interest of his judgment debtor, and thus sever the joint tenancy, or he can keep his lien alive and wait until the joint tenancy is terminated by the death of one of the joint tenants. If the judgment debtor survives, the judgment lien

> immediately attaches to the entire property.  If the judgment debtor is the first to die, the lien is lost.  If the creditor sits back to await this contingency, as respondent did in this case, he assumes the risk of losing his lien.

Zeigler, 52 Cal. App. 2d at 219–221.